**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RICARDO ANAYA, et al. <br><br>                     Plaintiffs, <br><br> v. <br><br> DIRECTV, LLC, et al., <br><br>                   Defendants. | Case No.  1:14-cv-05703 |
| ROBERT HEBRON, et al., <br><br>                     Plaintiffs, <br><br> v. <br><br> DIRECTV, INC., et al. <br><br>                   Defendants. | Case No.  1:14-cv-8155 |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS DIRECTV, LLC'S
AND, DIRECTSAT USA, LLC'S MOTIONS TO DISMISS
(*Anaya*, Doc. 94 and 100; *Hebron*, Doc. 62 and 76)[1]**

---

[1]  Defendant Multiband joins certain arguments advanced by Defendants DIRECTV and DirectSat in support of their Motions to Dismiss filed in *Hebron v. DIRECTV, Inc., et al*.  *See Hebron,* Defendant Multiband Corporation's Motion to Withdraw Its Motion to Compel Plaintiff Terry Weatherman to Arbitration and Request to Join in Certain Sections of the Other Defendants (sic) Pending Motions to Dismiss, Doc. 81.

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY AND THE PREDECESSOR CASES: *LANG*, *ACFALLE*, AND *ARNOLD* ........................................................................... 3

    A.    The *Lang* collective action. ................................................................. 3

    B.    Former *Lang* Plaintiffs filed their individual claims in related actions in the Central District of California. .................................................. 4

    C.    The *Arnold* collective action. ............................................................... 5

    D.    Plaintiffs in *Acfalle* and *Arnold* who performed installation work in Indiana refiled their claims in this Court. ........................................... 6

III.    ARGUMENT ....................................................................................................... 6

    A.    Standard of review under Rule 12. ....................................................... 6

    B.    Plaintiffs sufficiently allege an actionable employment relationship with DIRECTV and, where applicable, DirectSat and Multiband. ............... 8

        1.    *Despite Defendants' contentions, relevant pleading standards and precedent support the existence of the actionable employment relationship(s).* ...................................................................... 10

        2.    *Plaintiffs' allegations plausibly establish an actionable employment relationship.* .............................................................................. 12

    C.    Plaintiffs allege sufficient facts to support their claims of minimum wage and overtime violations. ............................................................. 15

        1.    *Despite Defendants' contentions, relevant pleading standards and precedent support Plaintiffs' position as to the sufficiency of their overtime and minimum wage claims.* ..................................... 15

        2.    *Plaintiffs' First Amended Complaint contains sufficient factual allegations to state a plausible claim for overtime and minimum wage violations.* ................................................................................. 19

    D.    Plaintiffs properly assert minimum wage claims under the FLSA for ultimate disposition on a more fully developed factual record. ........................... 21

    E.    Plaintiffs' willfulness allegations are sufficient to trigger a three-year look-back for statute of limitations purposes; Defendants are not entitled to dismissal of Plaintiffs' third-year FLSA claims. ................................... 23

i

F.     Plaintiffs state claims under the Illinois Employment Classification Act (IECA), which applies to DIRECTV, DirectSat, and Multiband. ........................ 26

G.     Plaintiffs do not seek to pursue time outside the statute of limitations of the IMWL or IECA. ................................................................................................. 30

H.     Plaintiffs do not pursue Illinois claims for time working in other States. ............ 31

I.      Plaintiffs have not improperly split claims against DIRECTV. ........................... 31

J.      Plaintiffs' Claims Under the Illinois Wage Payment Collection Act ("IWPCA") Should Not Be Dismissed. ................................................................ 32

K.     Even if the Court believes that certain aspects of Plaintiffs' First Amended Complaint are not sufficiently detailed, the appropriate remedy is to afford Plaintiffs leave to amend, not to dismiss this case in its entirety. ......................... 33

IV.    CONCLUSION ................................................................................................................. 34

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Acosta Colon v. Wyeth Pharm. Co.*,
   363 F. Supp. 2d 24 (D.P.R. 2005) ........................................................................ 24

*Aldrich v. DIRECTV, Inc.*,
   2015 U.S. Dist. LEXIS 65839 (D. Colo. May 20, 2015) ......................................... 3

*Alexander v. FedEx Ground Package Sys., Inc.*,
   2014 WL 4211107 (9th Cir. Aug. 27, 2014) ......................................................... 11

*Alston v. DIRECTV, Inc.*,
   2015 U.S. Dist. LEXIS 67002 (D.S.C. May 22, 2015) ............................................ 3

*Alvarez v. IBP, Inc.*,
   339 F.3d 894 (9th Cir. 2003) ............................................................................... 21

*Amponsah, et al. v. DIRECTV, Inc., et al.*,
   No. 14-cv-03314-ODE (N.D. GA Apr. 16, 2015) ............................................. 3, 25

*Andersen, et al. v. DIRECTV, Inc., et al.*,
   No. 14-cv-02307-PHX-SRB (D. Ariz. May 5, 2015) ............................................... 3

*Andersen v. Mt. Clemens Pottery*,
   328 U.S. 680 (1946) ............................................................................................... 8

*Arnold, et al. v. DIRECTV, Inc., et al.*,
   No. 10-0352, 2011 WL 839636 (E.D. Mo. Mar. 7, 2011) ........................... 3, 14, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 2, 6

*Barbosa, et al. v. DIRECTV, Inc.*,
   No. 14-13896-LTS, (D. Mass. Mar. 11, 2015) ................................................. 3, 25

*Bartlow v. Costigan*,
   2014 IL 115152, 13 N.E.3d 1216 ..................................................................... 27, 28

*Baystate Alternative Staffing, Inc. v. Herman*,
   163 F.3d 668 (1st Cir. 1998) ................................................................................ 10

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... passim

*Berger v. DIRECTV, Inc.*,
   2015 U.S. Dist. LEXIS 50146 (D. Or. Apr. 16, 2015) ...................................... 3, 18

*Berger v. DIRECTV, Inc.*,
   2015 U.S. Dist. LEXIS 51178 (D. Or. Mar. 6, 2015) .............................................. 3

*Bonnette v. Cal. Health & Welfare Agency*,
   704 F.2d 1465 (9th Cir. 1983) ....................................................................... 10, 11

*Boon v. Canon Business Solutions, Inc.*,
   No. 12-56639, 2015 WL 675112 (9th Cir. Feb. 18, 2015) ................................... 18

*Bulaj v. Wilmette Real Estate and Management Co., LLC*,
No. 09 CV 6263, 2010 WL 4237851 (N.D. Ind. Oct. 21, 2010) ...................................... 10, 11

*Cataldo v. U.S. Steel Corp.*,
676 F.3d 542 (6th Cir. 2012) .................................................................................... 23

*Ceant v. Aventura Limo. & Transp. Serv., Inc.*,
874 F. Supp. 2d 1373 (S.D. Fla. 2012) .................................................................... 9

*Chao v. Westside Drywall, Inc.*,
709 F. Supp. 2d 1037 (D. Or. 2010) .................................................................... 9, 14

*Cooper, et al. v. DIRECTV, LLC*,
14-cv-08097-AB (C.D. Cal. May 21, 2015) ................................................................ 3

*Daugherty v. Encana Oil & Gas (USA), Inc.*,
2011 WL 1344331 (D. Colo. Apr. 8, 2011) .............................................................. 14

*Dekeyser v. Thyssenkrupp Waupaca, Inc.*,
589 F.Supp.2d 1026 (7th Cir. 2008) ........................................................................ 25

*DeWitt v. Daley*,
336 B.R. 552 (S.D. Fla. 2006) .................................................................................. 9

*Dole v. Elliott Travel & Tours, Inc.*,
942 F.2d 962 (6th Cir. 1991) ................................................................................... 24

*Doucette v. DIRECTV, Inc.*,
2015 U.S. Dist. LEXIS 64517 (W.D. Tenn. May 18, 2015) ...................................... 3

*Elwell v. Univ. Hospitals Home Care Servs.*,
276 F.3d 832 (6th Cir. 2002) .................................................................................... 8

*Erickson v. Pardus*,
551 U.S. 89 (2007).................................................................................................... 21

*Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*,
553 F.3d 559 (7th Cir. 2009) .................................................................................... 10

*Evans v. Pearson Enterprises, Inc.*,
434 F.3d 839 (6th Cir. 2006) .................................................................................... 33

*Franks v. MKM Oil, Inc.*,
2010 WL 3613983 (N.D. Ill. Sept. 8, 2010) ............................................................. 16

*Iraheta v. Lam Yuen, LLC*,
No. DKC 12-1426, 2012 WL 5995689 (D. Md. Nov. 29, 2012).............................. 9

*Jones v. Bock*,
549 U.S. 199 (2007).................................................................................................. 23

*Karr v. Strong Detective Agency, Inc.*,
787 F.2d 1205 (7th Cir. 1986) .............................................................................. 9, 10, 11

*LaForce v. Hope Academies*,
2014 WL 2835624 (N.D. Ohio June 23, 2014)........................................................ 16

*Landers v. Quality Commc'ns, Inc.*,
   771 F.3d 638 (9th Cir. 2014) .......................................................... 18

*Lang v. DirecTV, Inc.*,
   735 F. Supp. 2d 421 (E.D. La. 2010) ....................................... 11, 14

*Lang v. DirecTV, Inc.*,
   801 F. Supp. 2d 532 (E.D. La. 2011) ............................................ 3

*Lucero v. Leona's Pizzeria, Inc.*,
   2015 WL 191176 (N.D. Ill. Jan. 13, 2015) ................................... 17

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) ..................................................................... 24

*Moore v. State of Indiana*,
   999 F.2d 1125 (7th Cir. 1993) ..................................................... 33

*Nationwide Mut. Ins. Co. v. Darden*,
   503 U.S. 318 (1992) ....................................................................... 9

*Nicholson v. UTi Worldwide, Inc.*,
   No. 3:09-cv-722-JPG-DGW, 2010 WL 551551 (N.D. Ill. Feb. 12, 2010) ............... 6, 7, 15, 16

*People v. Ketterman Commc'ns, Inc.*,
   2014 IL App (4th) 120460-U ................................................... 28, 29

*Perez, et al. v. Lantern Light Corporation, et al.*,
   Case No. C12-01406-RSM (W.D. Wa. May 29, 2015) ............... 14, 29, 33

*Perez v. Wells Fargo & Co.*, __ F. Supp. 3d __,
   No. 14-0989 PJH, 2014 WL 6997618 (N.D. Cal. Dec. 11, 2014) ....................... 16

*Petty v. Russell Cellular, Inc.*,
   No. 13-111-, 2014 WL 340417 (S.D. Ohio Jan. 30, 2014) .................... 8

*Renteria-Camacho, et al. v. DIRECTV, Inc., et al.*,
   No. 14-2529-CM-JPO (D. Kan. Mar. 26, 2015) ................................ 3

*Richardson v. Granite City Hotel and Resorts, LLC*,
   No. 14-cv-01135-JPG-SCW, 2015 WL 1944402 (S.D. Ill. April 29, 2015) ............ 15, 16

*Ross v. Jack Rabbit Servs., LLC*,
   No. 3:14-CV-00044-TBR, 2014 WL 2219236 (W.D. Ky. May 29, 2014) .................. 24

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947) ....................................................................... 8

*Secretary of Labor, United States Dep't of Labor v. Lauritzen*,
   835 F.2d 1529 (7th Cir. 1987) ................................................. 10, 11

*Tahir v. Avis Budget Grp., Inc.*,
   2009 WL 4911941 (D.N.J. Dec. 14, 2009) .................................... 14

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ............................................ 7, 17, 19

*Torres–Lopez v. May*,
  111 F.3d 633 (9th Cir. 1997) .......................................................................... 11

*Wharton v. Comcast Corp.*,
  *912 F. Supp. 2d 655 (N.D. Ill. 2012)* ............................................................ 33

*Zampos v. W&E Communications, Inc.*,
  970 F.Supp. 2d 794 (N.D. Ill. 2013) .................................................. 29, 30, 31

## **Statutes**

29 U.S.C. § 203(d) ............................................................................................ 8

29 U.S.C. § 203(g) ............................................................................................ 9

29 U.S.C. § 203(s)(1)(A) ................................................................................... 8

29 U.S.C. § 255(a) ........................................................................................... 23

820 ILCS § 185/3 ............................................................................................ 27

820 ILCS 185/5 .................................................................................. 26, 27, 28

820 ILCS 185/10 .................................................................................... 26, 27

820 ILCS 105/12 .............................................................................................. 30

820 ILCS 185/20 .............................................................................................. 26

820 ILCS 185/40 .............................................................................................. 28

820 ILCS 185/60 ...................................................................................... 28, 30

## **Regulations**

29 C.F.R. § 791.2 .............................................................................................. 9

29 C.F.R. § 791.2(b) ........................................................................................ 13

## I.    INTRODUCTION

Plaintiffs in *Anaya* and *Hebron* are, in total, twenty current and former technicians who installed DIRECTV satellite television equipment in the State of Illinois. Fifteen of these Plaintiffs were treated as "independent contractors."[2] Three Plaintiffs worked directly as W-2 employees of DirectSat.[3] One Plaintiff spent some of his time working as a "contractor" of DirectSat.[4] One Plaintiff worked directly as a W-2 employee of Multiband.[5] And one Plaintiff spent some or all of his time working as a W-2 employee of AeroSat, which was subsequently acquired by DIRECTV.[6] Despite their uniform control over Plaintiffs' work and the piece-rate (i.e., per task) payment system used to compensate each Plaintiff, Defendants deny an actionable employment relationship with any of the Plaintiffs they employ. But Plaintiffs' 34-page, 175-paragraph, narrative First Amended Complaints expose DIRECTV's hierarchical Provider Network for what it is: a ploy to disassociate DIRECTV from the technicians whose work it controls in order to avoid the reach of the Fair Labor Standards Act ("FLSA") and analogous Illinois employment laws. The First Amended Complaints (*Anaya* Doc. 77, *Hebron* Doc. 39) put Defendants on notice of Plaintiffs' claims, and allege facts that, accepted as true as they must be, plausibly entitle Plaintiffs to relief under the FLSA.  Defendants' attempt to target particular claims for Rule 12 dismissal fall flat.

---

[2]    Plaintiffs Anaya, Blake, Cruz, Cyprian, Erhart, Gage, Intzekiotis, Puljezevic, Romero, Sobieszek, Hebron, Kauchak, Sampson, Stroening, and Yancey.

[3]    Plaintiffs Bradford, Harris, and Meeley. Plaintiff Harris also spent a period of his tenure working as a W-2 employee of MasTec, another HSP in DIRECTV's Provider Network; he only brings his claims against DIRECTV for that time.

[4]    Plaintiff Cyprian.

[5]    Plaintiff Weatherman.

[6]    Plaintiff Blanchard.

First, Plaintiffs provide a detailed description of the Provider Network itself, which functions pursuant to an interconnected series of contracts between DIRECTV and subordinate companies—such as DirectSat and Multiband—known as "Home Service Providers" ("HSPs"), contracts between HSPs and subcontractors, and contracts between subcontractors and technicians. Plaintiffs then allege detailed facts describing the top-down policies and procedures that controlled Plaintiffs' installation work, the manner in which those policies were administered through the Provider Network, and the piece-rate pay system that denied them wages required by law. As a result of the economic realities imposed by these policies, Plaintiffs allege DIRECTV and, where applicable, HSPs DirectSat and Multiband, are, in fact, Plaintiffs' "employers" pursuant to the FLSA's broad statutory definition. Plaintiffs who worked as W-2 employees allege that they performed tasks for which they were not compensated under DIRECTV's piece-rate system. And Plaintiffs who worked as independent contractors likewise allege they regularly worked in excess of 40 hours in a workweek but were never paid time-and-a-half. Due to those unpaid hours, and because independent-contractor Plaintiffs were made to give back portions of their piece rate pay through "chargebacks" and bear the burden of unreimbursed business expenses, Plaintiffs properly plead that DIRECTV's piece-rate system resulted in workweeks in which they received an effective wage rate below the minimum wage.

Plaintiffs' fact allegations exceed the minimum pleading requirement of Fed. R. Civ. P. 8—to state a plausible claim on its face—as applied in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In at least ten (10) related cases arising out of DIRECTV's fissured employment scheme, , courts have denied similar motions to dismiss filed

by DIRECTV and/or its HSPs (such as DirectSat and Multiband).[7] Further, given the procedural history in this case, Defendants cannot credibly maintain that they are not on notice of what claims Plaintiffs assert, which is the primary purpose for Rule 8's notice pleading requirement.[8]

Ultimately, Defendants Rule 12 Motions attempt to pre-litigate this case without affording Plaintiffs an opportunity to conduct appropriate discovery and without providing the Court a complete factual record on which to evaluate the parties' respective positions. As shown below, Plaintiffs have provided sufficient factual allegations to show that they are plausibly entitled to relief on their claims. Defendants' motions to dismiss must be denied.

## II. PROCEDURAL HISTORY AND THE PREDECESSOR CASES: *LANG*, *ACFALLE*, AND *ARNOLD*

### A. The *Lang* collective action.

In February 2010, a group of technicians working as 1099 subcontractors in the DIRECTV Provider Network filed claims against DIRECTV and certain HSPs in *Lang et al. v. DIRECTV, Inc., et al.*, Case No. 10-1085, removed to the Eastern District of Louisiana. *See*

---

[7]   *See Alston v. DIRECTV, Inc.*, 2015 U.S. Dist. LEXIS 67002 (D.S.C. May 22, 2015); *Cooper, et al. v. DIRECTV, LLC*, 14-cv-08097-AB (C.D. Cal. May 21, 2015); *Aldrich v. DIRECTV, Inc.*, 2015 U.S. Dist. LEXIS 65839 (D. Colo. May 20, 2015); *Doucette v. DIRECTV, Inc.*, 2015 U.S. Dist. LEXIS 64517 (W.D. Tenn. May 18, 2015); *Andersen, et al. v. DIRECTV, Inc., et al.*, 14-cv-02307-PHX-SRB (D. Ariz. May 5, 2015); *Berger v. DIRECTV, Inc.*, 2015 U.S. Dist. LEXIS 50146 (D. Or. Apr. 16, 2015) (adopting report and recommendation in *Berger v. DIRECTV, Inc.*, 2015 U.S. Dist. LEXIS 51178 (D. Or. Mar. 6, 2015); *Barbosa, et al. v. DIRECTV, Inc.*, No. 14-13896-LTS, Order on Defendants' Motion to Dismiss, Doc. 24 (D. Mass. Mar. 11, 2015); *Amponsah, et al. v. DIRECTV, Inc., et al.*, Order, Doc. 47 (N.D. GA Apr. 16, 2015); *Renteria-Camacho, et al. v. DIRECTV, Inc., et al.*, No. 14-2529-CM-JPO, Memorandum and Order, Doc. 23 (D. Kan. Mar. 26, 2015); *Arnold, et al. v. DIRECTV, Inc., et al.*, No. 10-0352, 2011 WL 839636 (Doc. 49) (E.D. Mo. Mar. 7, 2011).

[8]   Plaintiffs are compelled to respond to DIRECTV's (irrelevant) suggestion that this action represents "a second or third attempt to bring the same claim against DirecTV." (Doc. 101, at 7). To the contrary, Plaintiffs claims have yet to be addressed on their merits. In fact, to the extent any court has touched upon the merits, substantive results have favored Plaintiffs. S*ee, e.g., Lang v. DirecTV, Inc.*, 801 F. Supp. 2d 532 (E.D. La. 2011) (denying DIRECTV's motion for summary judgment on the issue of "employment").

*Anaya* FAC ¶ 78; *Hebron* FAC ¶ 81.[9] Defendants moved for summary judgment claiming Plaintiffs were not employees of DIRECTV as a matter of law. The Court denied Defendants' motion, finding substantial evidence showing that DIRECTV extensively controls each technician's appearance, job assignments, scope of work, performance standards, and compensation. *See Lang*, Doc. 147. The case was then conditionally certified as a FLSA collective action. *See Lang*, Doc. 245. Thereafter, in August and September 2012, Plaintiffs Anaya, Blake, Cyprian, Erhart, Gage, Hebron, Intzekiotis, Puljezevic, Romero, and Sobieszek opted-in to the case and asserted their own claims against DIRECTV.

Discovery conducted in *Lang* revealed that Plaintiffs' damages would be difficult to calculate on common proof at trial. As a result, the parties filed a Joint Motion to Decertify the *Lang* action. On September 3, 2013, the Court decertified *Lang* on agreed terms, dismissed all opt-in Plaintiffs *without prejudice*, and tolled the statute of limitations to permit the opt-in Plaintiffs to refile their individual claims. *See Lang*, Doc. 467. The claims of the four named plaintiffs remaining in the case were settled prior to trial. *See Lang*, Doc. 514.

### B. Former *Lang* Plaintiffs filed their individual claims in related actions in the Central District of California.

On December 23, 2013, Plaintiff Hebron filed his individual claims against Defendants in *Acfalle, et al. v. DIRECTV, Inc., et al.*, Case No. 13-8108 (Doc.1) (amended on December 23, 2013) (Doc. 9), an action filed by former *Lang* Plaintiffs and others in the Central District of California. *See Hebron* ¶ 82.

---

[9]  Citations to paragraphs in the First Amended Complaints (*Anaya* Doc. 77) are denoted by "*Anaya* FAC ¶ __" and (*Hebron* Doc. 39) are denoted by "*Hebron* FAC ¶ __," and refer to the Court's pagination.

On July 22, 2014, the Court entered an order "dropping" 277 non-California Plaintiffs with FLSA-only claims (including Plaintiff Hebron), dismissing them *without prejudice* to refile their claims closer to their home states or where they performed their work, and tolling the running of their statute of limitations for 90 days. *See Acfalle,* Doc. 71.

Also on November 1, 2013, Plaintiffs Anaya, Blake, Cyprian, Erhart, Gage, Intzekiotis, Puljezevic, and Sobieszek, and also Romero and Cruz filed their individual claims against Defendants in *Anaya, et al. v. DIRECTV, Inc., et al.,* Case No. 13-05130 (Doc.1), also filed by former *Lang* Plaintiffs and others in the Central District of California. *See Anaya* ¶ 79. On July 22, 2014, the court entered an order granting Defendants' Motion to Transfer and denied as moot Defendants' Motion to Sever Defendants, *See Anaya* Doc. 57, finding, pursuant to the parties' stipulation, that the Northern District of Illinois was the appropriate District for this action. *Anaya* FAC ¶ 79.

### C.     The *Arnold* collective action.

Between January and March 2013, Plaintiffs Blanchard, Bradford, Harris, Kauchak, Meeley, Romero,[10] Sampson, Stroening, and Yancey filed consents to become party Plaintiffs in *Arnold, et al. v. DIRECTV, Inc., et al.,* Case No. 10-cv-0352, a conditionally certified collective action pending in the Eastern District of Missouri. *See Hebron* FAC ¶ 84. Pursuant to a Proposed Case Management Plan and Order (Docs. 200, 216), the court dismissed *without prejudice* the claims of certain opt-in plaintiffs who did not fit into a subclass (*see* Doc. 220), including Plaintiffs Blanchard, Bradford, Harris, Kauchak, Meeley, Sampson, Stroening, and Yancey, and

---

[10]  Plaintiff Romero filed consent to joins in both *Lang* and *Arnold*; Plaintiff Romero is only pursuing his independent contractor time in *Anaya*, while his time working as a W-2 employee is being pursued in *Arnold v. DIRECTV*.

tolled the statute of limitations to allow them to refile their individual claims.[11] *See Arnold*, Docs. 221 and 244.

      **D.    Plaintiffs in *Acfalle* and *Arnold* who performed installation work in Indiana refiled their claims in this Court.**

On October 17, 2014, Plaintiffs named herein filed their individual claims in this Court. *Hebron*, Doc. 1. The Court extended deadlines in this case to permit Plaintiffs to file a First Amended Complaint. *Hebron* Docs. 36, 39. Plaintiffs filed a First Amended Complaint (Doc. 41), and their claims are now ready to proceed on their individual merits.

**III.    ARGUMENT**

      **A.    Standard of review under Rule 12.**

Rule 8(a)(2) requires a pleading to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court "clarified" this pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), by holding that, to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, that when taken as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2010 WL 551551, at *2 (N.D. Ill. Feb. 12, 2010) (noting *Twombly/Iqbal* "modified federal pleading requirements, they did not do away with the liberal federal notice pleading standard." "A Complaint still need not contain detailed factual allegations.").

In reviewing a complaint, the court must accept the truth of all factual allegations. *Iqbal*, 556 U.S. at 678. Although mere legal conclusions and "a formulaic recitation of the elements of

---

[11]    As Defendants note on Romero, and as further discussed *infra*, Plaintiffs Romero, Sampson, and Yancey are not named on the *Arnold* decertification list because certain of their time—not subject to claims in this action—is still being pursued in *Arnold*. See *Anaya* FAC, ¶ 79, n. 5; *Hebron* FAC ¶ 84, n. 5.

a cause of action" will not suffice, *Twombly*, 550 U.S. at 555, the complaint need only give the defendant "sufficient notice to enable him to begin to investigate and prepare a defense to a plausible claim." *Nicholson*, 2010 WL 551551 at *4, citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) ("A Plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'"). In short, and contrary to what Defendants' arguments suggest, neither the Supreme Court nor the Seventh Circuit read Rules 8 or 12(b)(6) to require a plaintiff establish a prima facie case by way of its complaint. *Twombly*, 550 U.S. at 569, 585 (holding "we do not require heightened fact pleading of specifics"). Indeed, the Seventh Circuit has cautioned that "*Bell Atlantic* must not be over-read." *Tamayo*, 526 F.3d at 1082. "It did not, in fact, 'supplant the basic notice-pleading standard.'" *Id.*, at 1083.

In their motions, Defendants offer nine substantive grounds for dismissal: (1) Plaintiffs fail to sufficiently plead an actionable employment relationship (Doc. 95 at 8; Doc. 101 at 7); (2) Plaintiffs fail to plead facts sufficient to support their overtime and minimum wage claims (Doc. 95, at 9; Doc. 101 at 8); (3) certain Plaintiffs' facts as pled preclude minimum wage claims (Doc. 95, at 9; Doc. 101 at 8); (4) Plaintiffs' claims against Defendants are time-barred in whole or in part (Doc. 95 at 27; Doc. 101 at 8); (5) certain Plaintiffs' claims fail under the IECA because there is no direct relationship with Defendants (Doc. 95 at 31-33; Doc. 101 at 8); (6) certain Plaintiffs' claims under the IMWL and IECA are time-barred in whole or in part (Doc. 95 at 33; Doc. 101 at 33); (7) certain Plaintiffs' claims under Illinois law are barred because they worked in other states (Doc. 95 at 34; Doc. 101 at 8); (8) certain Plaintiffs have engaged in improper

claim splitting (Doc. 101 at 8); and (9) certain Plaintiffs' claims fail to plead facts sufficient to support their overtime and minimum wage claims under the IWPCA (Doc. 95 at 31; Doc. 101 at 8).[12]

Despite Defendants' assertions, Plaintiffs' claims allege straightforward violations of federal law, supported by well-pleaded First Amended Complaints that provide both specific and contextual factual allegations establishing that the claims are plausible on their face. Accordingly, none of the criticisms Defendants lodge warrant dismissal.

**B.      Plaintiffs sufficiently allege an actionable employment relationship with DIRECTV and, where applicable, DirectSat and Multiband.**

The FLSA's definition of "employer" is among the broadest ever enacted and includes "any person acting directly *or indirectly* in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (emphasis added); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("The definition of 'employ' is broad" and "include[s] those who are compensated on a piece rate basis.").[13] The FLSA "defines the verb 'employ' expansively to

---

[12]    Defendants DIRECTV, DirectSat, and Multiband seek dismissal on the basis that there is no independent cause of action for recordkeeping violations under the FLSA (Doc. 95 at  29; Doc. 101 at 8; Doc. 81 at 2.) Plaintiffs agree there is no independent cause of action for recordkeeping violations, and do not, by way of Count I of their First Amended Complaint, seek to assert one. DIRECTV's motion on this basis is moot. *See Petty v. Russell Cellular, Inc.*, No. 13-111-, 2014 WL 340417, at *1 (S.D. Ohio Jan. 30, 2014) (citing, *e.g.*, *Elwell v. Univ. Hospitals Home Care Servs.*, 276 F.3d 832 (6th Cir. 2002)). However, as noted in footnote 2, *supra*, Defendants' failure to keep the records required under the FLSA results in a shifting of evidentiary burdens. *See, e.g.*, *Andersen v. Mt. Clemens Pottery*, 328 U.S. 680 (1946). Therefore, factual allegations related to Defendants' failure to maintain records as required by the FLSA are properly included in the Complaint.

[13]    It is not clear that Defendants are challenging either the sufficiency or accuracy of Plaintiffs' allegations regarding their status as covered "enterprises" "engaged in commerce," under 29 U.S.C. § 203(s)(1)(A). Regardless, the allegations, taken as true, establish that DIRECTV, DirectSat, and Multiband are covered "employers": they describe the nature of DIRECTV, DirectSat, and Multiband's business, the services they provide to customers, and their connection to interstate commerce. *See Anaya* and *Hebron* FACs ¶ 1 (alleging DIRECTV is the "largest provider of satellite television services in the United States" with a customer base of "more than 20 million domestic subscribers"); *Anaya* FAC ¶ 37; *Hebron* FAC ¶ 38 (describing plaintiffs' principal job duties); *Anaya*

8

mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

And an employee can have more than one employer, each of whom is jointly and severally liable for violations of the Act. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206-1207 (7th Cir. 1986) ("Two or more employers may jointly employ someone for the purpose of the FLSA.") (Citation omitted.); 29 C.F.R. § 791.2 (defining joint employment and describing situations in which it arises).[14] "All joint employers are individually responsible for compliance with the FLSA." *Karr*, 787 F.2d at 1207.

---

FAC ¶ 16-17; *Hebron* FAC ¶ 16-18 (noting DIRECTV operates from its headquarters in California, DirectSat from Pennsylvania, and Multiband from Minnesota); *Anaya* FAC ¶ 44; *Hebron* FAC ¶ 47 (describing nature of DIRECTV, DirectSat and Multiband's business); *Anaya* FAC ¶ 57; *Hebron* FAC ¶ 60 (alleging DIRECTV, DirectSat and Multiband are engaged in interstate commerce and, upon information and belief, gross more than $500,000 in revenue per year); *Anaya* FAC ¶ 142; *Hebron* FAC ¶ 148 (alleging DIRECTV, DirectSat and Multiband are subject to the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce). This is more than sufficient to satisfy the pleading standards. *See, e.g., Ceant v. Aventura Limo. & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) ("to properly allege … enterprise coverage, [plaintiff] need not do much. Aside from stating the nature of his work and the nature of [defendant's] business, he must provide only straightforward allegations connecting that work to interstate commerce).

[14] Defendants repeatedly fault Plaintiffs—without citation to authority—for failing to name certain third parties who may also be liable to Plaintiffs. Whether subcontracting entities or other Providers are additional employers, however, is a red herring that misconstrues Plaintiff's claims against Defendants. Plaintiffs are not required to prove that subcontractors were employers in order to prove that the Defendants employed and/or jointly employed each Plaintiff. *See* 29 C.F.R. § 791.2. Nor are these subcontracting entities indispensable or necessary parties to the action, because full relief can be afforded under the FLSA from the named Defendants. *See, e.g., Iraheta v. Lam Yuen, LLC*, No. DKC 12-1426, 2012 WL 5995689, at *5-6 (D. Md. Nov. 29, 2012); *DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006).

DIRECTV—with HSPs DirectSat and Multiband—are joint employers despite Defendants' constant refrain that they did not directly hire, engage, or pay Plaintiffs. Although the subcontracting firms are convenient scapegoats, their absence from this action is wholly irrelevant to the question of whether the Complaint plausibly alleges Defendants' liability to Plaintiffs under the FLSA. *See Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1061 (D. Or. 2010) (concluding plaintiffs were employees rather than independent contractors and defendants were their joint employers despite fact that subcontracting entities were not identified or joined in action as additional joint employers). Defendants' arguments to the contrary are nothing more than an attempt to shift the Court's focus away from the relevant inquiry under Rule 8 and the facts Plaintiffs allege in support of their claims.

> **1.** *Despite Defendants' contentions, relevant pleading standards and precedent support the existence of the actionable employment relationship(s).*

To determine whether an employment relationship exists for the purposes of the FLSA, courts look not to the common law conceptions of that relationship or to the employers' self-serving labels, but rather to the "economic reality" of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer. *See Secretary of Labor, United States Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1531 (7th Cir. 1987) ("employees are those who as a matter of economic reality are dependent upon the business to which they render services.") (Citations omitted.); *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 565 (7th Cir. 2009) (applying a six-factor test "to determine the economic reality of the situation."); *Bulaj v. Wilmette Real Estate and Management Co., LLC*, No. 09 CV 6263, 2010 WL 4237851, at *5 (N.D. Ind. Oct. 21, 2010) (applying six-factor test approved in *Suskovich*, and finding Plaintiff an employee of Defendants and not an independent contractor.); *Karr.*, 787 F.2d at 1206-1207 (evaluating the "economic reality" of the totality of the circumstances bearing on whether the putative employers jointly employed the Plaintiff), citing *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (setting out factors for determining whether employment relationship exists under FLSA); *see also Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) (same). "A court is required to look past the 'technical concepts' of employment and determine if the 'economic reality' is such that an individual would be deemed an employee for purposes of the FLSA." *Bulaj*, 2010 WL 4237851, at *4.

In the Seventh Circuit, courts consider the following six factors in assessing the economic reality of the working relationship: "(1) the nature and degree of the alleged employer's control

as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employers' business." *Id*., at *5, citing *Lauritzen*, 835 F.2d at 1534-35. Importantly, to determine the economic reality of working relationship, "courts do not look to a particular isolated factor but to all the circumstances of the work activity." *Lauritzen*, 835 F.2d at 1534. Yet, the focus of the economic realities test is on the element of control, *Bonnette*, 704 F.2d at 1470, and the concept of joint employment should be "defined expansively under the FLSA." *Torres–Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997); *see also Bulaj*, 2010 WL 4237851 at *5 ("Each of the criteria 'must be applied with [the] ultimate notion in mind' that 'dependence…indicates employee status.'"). Ultimately, the determination of an individual's employment status is a legal rather than a factual determination. *Karr*, 787 F.2d at 1206.

As in this case, and discussed in more detail below, company-wide policies are sufficient indicia of control under the economic realities test to give rise to joint employment, despite the putative employers' self-serving effort to label their employees "independent contractors." *See Alexander v. FedEx Ground Package Sys., Inc*., 2014 WL 4211107, at *6 (9th Cir. Aug. 27, 2014). DIRECTV's focus on what Plaintiffs have not alleged is unavailing; any complaint could be similarly attacked for what it does not contain. Indeed, "[a] plaintiff is not required to show that all . . . of the [joint employment] factors have been met." *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 432 (E.D. La. 2010). Here, however, Plaintiffs' allegations touch on all factors

11

relevant to the employment question, and a review of the substantive allegations in Plaintiffs'

complaint reveals that it readily survives scrutiny under the applicable pleading standard.

> **2.** ***Plaintiffs' allegations plausibly establish an actionable employment relationship.***

Plaintiffs specifically allege an employment relationship between Plaintiffs and

DIRECTV and, where applicable, Plaintiffs and DirectSat and/or Multiband, by virtue of the

policies and procedures set forth in the Provider Agreements between DIRECTV and the two

HSP Defendants, by which DIRECTV controls each level of the Provider Network. *Anaya* FAC

¶¶ 21, 25-38, 43, 46-55, 58-60; *Hebron* FAC ¶¶ 22, 26-39, 46, 49-58, 61-63. Furthermore,

Plaintiffs' Complaint specifically alleges that those agreements contain the policies and

procedures governing the technicians' work. *Anaya* FAC ¶¶ 25-38; *Hebron* FAC ¶¶ 26-39.

Plaintiffs describe how these policies are enforced, in part, through contracts between HSPs and

subcontractors and, in turn, through contracts between subcontractors and the technicians.

*Anaya* FAC ¶¶ 25, 31; *Hebron* FAC ¶¶ 26, 32.

Plaintiffs specifically describe DIRECTV's complete control over their work, down to

the "DIRECTV" shirts they were required to wear, the "DIRECTV" ID card they must show

customers (*Anaya* FAC ¶¶ 33, 36; *Hebron* FAC ¶¶ 34, 37), and the DIRECTV-required training

they had to complete. *Anaya* FAC ¶¶ 49-51; *Hebron* FAC ¶¶ 52-54. Plaintiffs outline their daily

work routine, beginning with daily work schedules transmitted directly to Plaintiffs through

DIRECTV's dispatching systems, which Plaintiffs completed in the prescribed order on the daily

work schedule. *Anaya* FAC ¶¶ 34-37, 54; *Hebron* FAC ¶¶ 35-38, 57. Plaintiffs further allege

that DIRECTV mandates particularized methods and standards of installation to assure

DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and

procedures. *Anaya* FAC ¶¶ 34, 49; *Hebron* FAC ¶¶ 35, 52. And after they completed a job, Plaintiffs were required to check in and close the work order with DIRECTV. *Anaya* FAC ¶ 37; *Hebron* FAC ¶ 38. DIRECTV and, where applicable, DirectSat and Multiband personnel conducted quality control, and determined whether Plaintiffs' work merited compensation, *Anaya* FAC ¶¶ 53, 55; *Hebron* FAC ¶¶ 56, 59, and effectively had the power to control hiring and firing decisions. *Anaya* FAC ¶¶ 28, 54; *Hebron* FAC ¶¶ 29, 57. Plaintiffs specifically allege that "As a consequence, each technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for." *Anaya* FAC ¶ 34; *Hebron* FAC ¶ 35.

As to defendants DirectSat and Multiband, the Complaint describes, with specificity, the functions these HSPs performed vis-à-vis the technicians (as they were required to do by their Provider Agreements with DIRECTV), including passing along scheduling, providing supervision, implementing and enforcing "qualification" requirements for hiring and technical requirements for job performance; maintaining "contractor files," *i.e.*, personnel files; and maintaining facilities for equipment and training. *Anaya* FAC ¶¶ 26-30; *Hebron* FAC ¶¶ 27-31.[15]

The Complaint exposes DIRECTV's policies and procedures and how those policies are implemented and enforced by the HSPs—DirectSat and Multiband. ¶¶ 33, 37-51, 61-62, 74-76. Working hand in hand, DIRECTV and its HSPs control every meaningful aspect of Plaintiffs' work and thus are, in fact, their employers. *See* 29 C.F.R. § 791.2(b) ("Where the employee performs work which simultaneously benefits two or more employers, . . . a joint employment

---

[15] The allegations in the First Amended Complaints (*Anaya* Doc. 77; *Hebron* Doc. 39) specifically contain the type of material allegations the *Amponsah* court found should have been included in the Complaint at issue there. *See Amponsah*, No. 14-3314-ODE (Doc. 47 at 12).

relationship generally will be considered to exist in situations such as . . . [w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."); *see Arnold*, 2011 WL 839636 at \*6 (concluding plaintiffs "set forth sufficient facts to . . . show that [DIRECTV and HSP] were their employers"). Tellingly, Defendants wholly ignore the opinions of the *Arnold* and *Lang* courts on very similar facts. *Id*. (citing, generally, *Lang*, 735 F. Supp. at 421 (order denying motion to dismiss on similar grounds)). [16] *See also Perez, et al. v. Lantern Light Corporation, et al*., Case No. C12-01406-RSM (Order on Cross-Motions for Summary Judgment, Doc. 158) (granting Plaintiffs' Motion for Summary Judgment, finding DIRECTV the joint employer of its technicians.)

Consistent with the legal elements of the claims and the relevant tests and definitions contained in applicable case law, Plaintiffs allege that, notwithstanding other, additional employers, DIRECTV employed them; they allege the nature of the relationship between DIRECTV and the entities—including HSPs DirectSat and Multiband—that also acted as their

---

[16] In addition to both the *Arnold* and *Lang* courts, other districts have denied motions to dismiss "joint employment" allegations similar to those advanced here. *See also Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 1344331, at \*1-2 (D. Colo. Apr. 8, 2011) (denying defendant's 12(b)(6) motion arguing that plaintiff failed to allege facts demonstrating an employment relationship between himself and defendant as required by FLSA, finding plaintiff sufficiently pled facts establishing that named defendant "controlled" his work by requiring attendance at performance evaluations, electronically monitoring daily activities and requiring performance of work in accord with defendants' standard operating procedures); *Tahir v. Avis Budget Grp., Inc.*, 2009 WL 4911941 (D.N.J. Dec. 14, 2009) (denying defendant's motion to dismiss a parent company from FLSA case; court had to accept facts pled as true, including allegation that the parent company was the plaintiff's employer); *c.f., Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1061 (D. Or. 2010) (on summary judgment, analyzing economic reality factors to conclude that plaintiffs were employees rather than independent contractor and that defendants were their joint employers despite fact that subcontracting entities were not identified or joined in action as additional joint employers).

14

employers; and they allege many indicia of control exercised by Defendants over every aspect of their daily work lives that, as a matter of economic reality, renders it plausible that Defendants jointly employed Plaintiffs. Any further analysis of this issue will need to be made with the benefit of a factual record: Defendants' Motions should be denied.

C.     **Plaintiffs allege sufficient facts to support their claims of minimum wage and overtime violations.**

Defendants DIRECTV, DirectSat, and Multiband's suggestions that Plaintiffs complaint is "devoid of the sufficient factual material" to make a plausible minimum wage claim such as "hours worked," "rate of pay," "amount of business expenses incurred," or "amount of chargebacks deducted" simply ignore the detailed facts offered in the allegations. (Doc. 95 at 24.) And their assertion that "no Plaintiff has pled sufficient detail . . . to support a reasonable inference that he worked more than forty hours in a given week" is simply inconsistent with the operative Complaint filed in this case. (Doc. 95, at 22.) Although some courts have recently diverged on what "degree of specificity is required" to state a plausible FLSA claim, Plaintiffs' First Amended Complaint satisfies the standard articulated by any of the recent circuit cases cited by Defendants, and certainly satisfies Rule 8 as interpreted by the Seventh Circuit.

1.     *Despite Defendants' contentions, relevant pleading standards and precedent support Plaintiffs' position as to the sufficiency of their overtime and minimum wage claims.*

The Seventh Circuit is not among the circuits that have adopted specific pleading standards for FLSA cases. Courts in this Circuit have "rejected the notion that *Bell Atlantic* requires extensive, detailed pleadings of FLSA claims." *Richardson v. Granite City Hotel and Resorts, LLC*, No. 14-cv-01135-JPG-SCW, 2015 WL 1944402, at *2-3 (S.D. Ill. April 29, 2015) (finding no rule requires plaintiff to allege rate of pay and wages due); *see also Nicholson*, 2010

WL 551551 at *4 (finding *Bell Atlantic* does not required detailed pleading of FLSA claims). Regardless, the district court cases Defendants cite granting 12(b)(6) motions are either inapposite, or distinguishable: the allegations at issue in those cases were not nearly as robust as Plaintiffs' here.[17]

In *Richardson*, the Court found, with respect to Plaintiffs' claim for overtime wages, that Plaintiffs' allegations were sufficient where they alleged the time period they were employed, their work location and position, and that they regularly worked in excess of 40 hours per week. *Richardson*, 2015 WL 1944402 at *3. The court relied on its own reasoning in *Nicholson*, stating that: "[t]he details of dates, times and allegedly unpaid overtime wages can—and must, if Nicholson wants to prevail—be fleshed out later in the case. They need not, however, be pled in the complaint." *Id*., citing *Nicholson*, 2010 WL 551551 at *7. And, with respect to Plaintiffs' minimum wage claims, the court found Plaintiffs' allegations sufficient where they alleged: "that the compensation Plaintiffs received from Defendants per week, when divided by the total time

---

[17] *See, e.g.*, *Perez v. Wells Fargo & Co.*, __ F. Supp. 3d __, No. 14-0989 PJH, 2014 WL 6997618 (N.D. Cal. Dec. 11, 2014) (granting judgment on pleadings where there were "no details pled as to any specific named plaintiff—not where he/she worked, not what his/her job duties were, not what the circumstances were under which any plaintiff was allegedly not paid minimum wage and/or overtime in a particular week" and where "plaintiffs plead no facts showing that any plaintiff worked more than 40 hours in any given week without being compensated for overtime hours during that workweek."); *LaForce v. Hope Academies*, 2014 WL 2835624 (N.D. Ohio June 23, 2014) (granting dismissal of overtime and minimum wage claims on "bare-bones" allegations and where plaintiffs claimed they were not paid based upon a "minimum wage of $8.00" where the Court could take judicial notice that minimum wage in Ohio was $7.95, not $8.00); *Franks v. MKM Oil, Inc.*, 2010 WL 3613983 (N.D. Ill. Sept. 8, 2010) (dismissing minimum wage claims where plaintiff alleged her salary was above minimum wage but failed to state how much she earned or what she earned once certain "forced repayments" were completed; denying motion to dismiss overtime claims where plaintiff adequately alleged she had already worked forty hours per week before she was required to perform payroll duties "off the clock"); *Nicholson v. UTi Worldwide, Inc.*, 2010 WL 551551 (S.D. Ill. Feb. 12, 2010) (same, upholding sufficiency of overtime allegation despite failure to "allege he worked more than forty hours in one week, but concluding that, under Illinois law, "[s]imply pleading that [plaintiff] has worked overtime or time off the clock is not sufficient to plausibly suggest [plaintiff's] weekly wage was less than his hours worked multiplied by the applicable minimum hourly wage.").

worked in those weeks, regularly fell below the federal…minimum wage."[18] *Id*. All that is required is within the pleading is enough to give the defendant "sufficient notice to enable him to begin to investigate and prepare a defense" to a plausible claim. *Id*., citing *Tamayo*, 526 F.3d at 1085.

Likewise, in a recent instructive case, another district court placed the circuit cases Defendants cite in their proper context and rejected the arguments seeking to extend those decisions that Defendants make here. In *Lucero v. Leona's Pizzeria, Inc.*, 2015 WL 191176, at *1-2 (N.D. Ill. Jan. 13, 2015), the court denied defendant's motion to dismiss, concluding that the flaws that rendered claims insufficient in *Landers*, *Davis*, *Lundy*, *DeJesus*, *Nakahata*, and *Pruell* (cited by Defendants DIRECTV and DirectSat at Doc. 95 at 20; Doc. 101 at 27 *et seq*.) did not exist in a non-off-the-clock case. *Id*., at *1. The court noted that, in all except *Landers* (which is discussed below), the claims were for off-the-clock time which left defendant "to guess at what time periods were covered by plaintiffs' allegations," thus failing to satisfy Rule 8. Plaintiffs here, like the *Lucero* plaintiff, do not base their allegations on unpaid, off-the-clock work. Rather, independent contractor plaintiffs allege they were misclassified as exempt from the FLSA's requirement to pay time-and-one-half for overtime; they allege "that [they] always worked more than forty hours per week"; and thus, unlike the cases on which Defendants rely, DIRECTV, DirectSat, and Multiband are not left to guess at when Plaintiffs contend they were underpaid: Plaintiffs allege they were underpaid for every week they worked for Defendants. *See Lucero*, 2015 WL 191176 at *1-2.

---

[18]  The court noted that "wages and hours worked are usually contained within an employee's record." *Id*. "As the employer, it would appear to the Court that the Defendants would have better access to the employee records than the Plaintiffs at this point in the litigation." *Id*. The same is true here.

In the context of Plaintiffs' overtime allegations, Defendants' citation to *Landers v. Quality Commc'ns, Inc*., 771 F.3d 638, 645 (9th Cir. 2014), although not controlling, actually cuts against their argument. In that case, the court stated that, to survive a motion to dismiss, an FLSA complaint should "estimate[e] the length of [plaintiff's] average workweek during the applicable period," or the average rate of pay, or amount of overtime believed to be owed, or "any other facts that will permit the court to find plausibility." *Id*., at 645; s*ee also Berger, et al. v. DIRECTV, Inc., et al*., Case No. 3-14-cv-01661-PK (Doc. 33) (denying DIRECTV's motion to dismiss, finding that plaintiffs may meet "the general pleading requirements as well as *Landers* "specific workweek" standard simply by 'identif[ying] tasks for which he was not paid and alleg[ing] that he regularly worked more than eight hours in a day and forty hours in a week.") citing *Boon v. Canon Business Solutions, Inc*., No. 12-56639, 2015 WL 675112, at *1 (9th Cir. Feb. 18, 2015).

Incredibly, Defendants claim "each individual Plaintiff wholly fails to identify any single workweek in which he worked over forty hours and did not receive overtime pay for those hours." (Doc. 95 at 23; Doc. 101 at 28) (emphasis omitted). But even a cursory review of the Complaint reveals that each Plaintiff estimates (1) the length of his workweeks; (2) the amount of overtime each Plaintiff worked per week; and (3) the source of unlawful deductions from his pay, including (a) "chargebacks" imposed by DIRECTV based on, inter alia, "faulty equipment, improper installation, customer calls regarding how to operate their remote control, or a customer's failure to give greater than a 95% satisfaction rating," and (b) failure to reimburse business expenses, i.e., the required purchase of supplies necessary to perform installations, such as "screws, poles, concrete, and cables." *Anaya* FAC ¶¶ 82-84, 88-90, 94-96, 100-02, 106-08,

112-14, 118-20, 124-26, 130-32, 136-38; *Hebron* FAC ¶¶ 88-90, 94-96, 100-02, 112-14, 118-20,

124-26, 130-32, 136-38, 142-44. Moreover, each Plaintiff provides an example of the hours they

worked and the pay they received in a "given workweek." *Id*. While Plaintiffs bear the burden to

prove up the actual extent of their damages at trial; they are not required to prove their case—or

the dollar amount of their damages—by way of the Complaint. *See Twombly*, 550 U.S. at 569;

*Tamayo*, 526 F.3d at 1085.

       **2.**      ***Plaintiffs' First Amended Complaint contains sufficient factual allegations to state a plausible claim for overtime and minimum wage violations.***

As described above, the piece-rate pay system limited Plaintiffs' compensation to certain

"productive tasks," regardless of how long it took them to complete that task, or how many hours

they spent on other necessary tasks deemed "nonproductive" and thus noncompensable. *Anaya*

FAC ¶¶ 66-67; *Hebron* FAC ¶¶ 69-70. These "non-productive" tasks, though necessary and

required, included "assembling satellite dishes, driving to and between job assignments,

reviewing and receiving schedules, calling customers to confirm installations, obtaining required

supplies, assisting other technicians with installations, performing required customer educations,

contacting DIRECTV to report in or activate service, working on installations that were not

completed, and working on 'rollback' installations where Plaintiffs had to return and perform

additional work on installations previously completed." *Anaya* FAC ¶ 68; *Hebron* FAC ¶ 71.

Plaintiffs specifically allege that they worked in excess of 45 hours per week, and most

Plaintiffs specifically allege that they worked *over* 60 hours per week: all of them performing

tasks—not all of which were paid—for the benefit of DIRECTV and, as to Plaintiff Weatherman,

for Multiband; and, as to Plaintiffs Anaya, Blake, Cruz, Cyprian, Gage, Intzekiotis, Sobieszek,

Harris, Meeley, and Stroening for DirectSat. *Anaya* FAC ¶¶ 82, 88, 94, 100, 106, 112, 118, 124,

130, 136; *Hebron* FAC ¶¶ 88, 94, 100, 106, 112, 118, 124, 130, 136. However, as the First Amended Complaint asserts, when working as "independent contractors," Plaintiffs did not receive overtime premium pay for work done beyond 40 hours in the work week. *Anaya* FAC ¶¶ 72, 74-75; *Hebron* FAC ¶¶ 75, 77-78.

Since Plaintiffs were paid the same amount regardless of how long it took to complete a job, were made to give back portions of their piece-rate pay through "chargebacks," and were not reimbursed for their necessary business expenses, Plaintiffs properly and plausibly plead that they often worked at an effective wage rate that was below the minimum wage. *Anaya* FAC ¶¶ 66-76; *Hebron* FAC ¶¶ 69-79.

These are direct statements explaining the nature of the overtime and minimum wage violations at issue here. Although Defendants claim more is required, Plaintiffs are simply not required to provide that level of detail at the pleading stage. The simple fact is that Defendants do not pay their "independent contractors" any overtime, while W-2 employees' regular rate used for overtime (as required by the FLSA) did not reflect compensation for all hours worked and they were therefore not properly compensated for overtime hours. Defendants also fail to pay any of their workers for a variety of tasks that results in them working for less than minimum wage. While it is true that Plaintiffs will eventually need to articulate their damages, they are not required to do so in their Complaint.

The allegations, reviewed in comparison to the allegations underlying those cases Defendants rely on, make clear that Plaintiffs provided more than the level of factual detail required at the pleading stage. *See Arnold v. DIRECTV*, 2011 WL 839636 at *7 (finding, on less detailed allegations, that DIRECTV technicians "did more than merely state a legal conclusion

20

that they were not paid minimum wage or for overtime as required. Rather, they set forth factual allegations—such as DIRECTV's alleged policies of not compensating Plaintiffs for the performance requiring technicians to attend meetings, and of imposing 'charge backs'").  In sum, Rule 8's purposes are satisfied by the allegations contained here; "[s]pecific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

> ### D. Plaintiffs properly assert minimum wage claims under the FLSA for ultimate disposition on a more fully developed factual record.

As a companion to their argument that Plaintiffs' allegations are insufficient to support their minimum wage and overtime claims, Defendants appear to argue that those claims fail on the facts alleged, at least as to Plaintiffs Blanchard, Bradford, Harris, Meeley, Yancey, and Weatherman.

As a matter of law, an employer's obligation to assure a minimum wage is evaluated on a workweek by workweek basis. *See, e.g., Alvarez v. IBP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003), *aff'd* 546 U.S. 21 (2005) (noting general consensus that, under the FLSA, an employee's right to recover minimum wage accrues each workweek). Defendants' position as to the Plaintiffs they identify here is untenable. On the one hand, they demand that Plaintiffs provide the type of factual specificity offered in the First Amended Complaints (which was lacking in the original complaints) in order for Plaintiffs to clear the hurdle of plausibility. On the other, they purport to argue that the estimate each Plaintiff offers, relating to a "given workweek," is conclusive evidence that Plaintiffs *always* made more than the statutory minimum wage and *never* worked a week in which their pay dropped below that minimum. But Defendants, no doubt, will ultimately deny the allegations that they now rely on as conclusive evidence to seek dismissal. With this argument, Defendants try to have their cake and eat it too. The fact that Larry Blanchard, for

example, in a single "given workweek," may have been paid at an effective rate of $8.26 per hour that he worked that week, (taking into account estimated unreimbursed business expenses), does not mean that, in another workweek, his business expenses combined with the imposition of chargebacks and long hours spent in nonproductive work (i.e., uncompensated work) would not drop his "hourly" wage for that week well below the minimum. *See Hebron* FAC ¶ 96; (take home pay of $496/week after accounting for *estimated* chargebacks and unreimbursed expenses divided by 50 hours worked results in $8.26 per hour that week); *see, e.g.*, Doc. 101 at 27.

As to the overtime claims, Defendants' calculations miss the mark entirely. Plaintiffs claim they were entitled to an overtime premium of .5 times their regular rate of pay, not at 1.5 times the minimum wage. *See* Doc. 95 at 26. Due to the noncompliant piece-rate system administered by Defendants that failed to pay for all hours worked, even when Plaintiffs were paid an effective hourly/regular rate, it was inaccurate and did not compensate them correctly for the overtime they worked.

To the contrary, and as noted above, Plaintiffs were paid the same piece-rate amount per task, regardless of how long it took to complete that task; they were made to give back portions of their piece-rate pay through "chargebacks"; and they were not reimbursed for their necessary business expenses. *Anaya* FAC ¶¶ 66-72; *Hebron* FAC ¶¶ 69-76. Together, these allegations properly and plausibly demonstrate that Plaintiffs often worked at an effective wage rate that was below the minimum wage. Indeed, Defendants make no challenge to the minimum wage claims of the other Plaintiffs herein.

The general allegations of Plaintiffs' Complaint preserve the minimum wage claims of the Plaintiffs identified in Defendants' memoranda—and the other unchallenged Plaintiffs—in

order to make such determinations on a more fully developed factual record. To be clear, once that record is developed, Plaintiffs who have any workweeks evidencing a minimum wage violation will pursue and prove those claims. Those Plaintiffs who do not, will not. The viability of Plaintiffs' minimum wage claims is simply not ripe for disposition at this stage. Defendants' Motions fail on this ground.

###### E. Plaintiffs' willfulness allegations are sufficient to trigger a three-year look-back for statute of limitations purposes; Defendants are not entitled to dismissal of Plaintiffs' third-year FLSA claims.

DIRECTV and DirectSat argue that Plaintiffs have not included sufficient detail in the Complaints to establish that alleged violations of the FLSA occurred within the applicable limitations period. To the contrary, and as an initial matter, a plaintiff does not have to plead a lack of affirmative defenses such as the statute of limitations in order to survive a motion to dismiss. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, dismissal under Rule 12(b)(6) may be appropriate when "the allegations in the complaint affirmatively show that the claim is time-barred ...." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). On its face, the First Amended Complaints make clear that all Plaintiffs have timely claims against DIRECTV, DirectSat, and Multiband within the three-year statute of limitations. *See* 29 U.S.C. § 255(a) (FLSA claim must be brought "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."). Plaintiffs will focus first on Defendants' general arguments, and then address Plaintiff-specific arguments raised by Defendant Multiband.

Defendants' arguments focus on a perceived deficiency in the "willful" nature of the FLSA violations alleged. An employer acts willfully for the purpose of the FLSA's statute of limitations if it knew or showed reckless disregard for the matter of whether its conduct was

23

prohibited by the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The question of whether a violation is willful is necessarily fact-driven: Other courts have held that, to make a factual finding regarding whether defendant's actions were willful is inappropriate at a motion to dismiss stage in the proceedings. *See Acosta Colon v. Wyeth Pharm. Co.*, 363 F. Supp. 2d 24, 29, 30 (D.P.R. 2005) *amended on reconsideration in part,* 2006 WL 508094 (D.P.R. Mar. 1, 2006) (factual finding regarding whether defendant's actions were willful is inappropriate at a motion to dismiss stage in the proceedings).

Regardless, Plaintiffs sufficiently allege that the *entire purpose* of Defendants' fissured employment scheme—insisting on misclassifying technicians as "independent contractors" or enlisting subordinates to do the hiring in order to disclaim employer status—was a willful attempt to avoid obligations to pay these technicians in accord with the FLSA. *Anaya* FAC ¶¶ 1, 2, 39-40, 56, 57-58, 69-77, 144-148; *Hebron* FAC ¶¶ 1, 2, 39-40, 59, 60-61, 72-80. Other Circuits have liberally applied the *McLaughlin* standard, repeatedly holding that previous DOL investigations regarding overtime violations are evidence that subsequent FLSA violations are willful. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991); *see Acosta*, 363 F. Supp. 2d at 30 (denying defendant's motion concluding that "dismissal cannot be granted due to plaintiffs' sufficient allegation regarding defendant's conduct as willful which, in turn, triggers the applicability, albeit temporarily, of the three-year statute of limitations."); *see also Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-00044-TBR, 2014 WL 2219236, at *4 (W.D. Ky. May 29, 2014) (granting conditional certification and denying defendants' request that class information to be provided be limited to individuals who worked for them within the past two years, concluding that, where plaintiff alleged that he and others were intentionally misclassified

24

as independent contractors in an effort to circumvent the FLSA's minimum-wage and overtime requirements, three year look-back for notice appropriate). Likewise, in the Seventh Circuit, courts have found that even a general assertion that a defendant has willfully violated the FLSA is sufficient to overcome a motion to dismiss. *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F.Supp.2d 1026, 1036 (7th Cir. 2008) ("Plaintiffs' assertions that [defendant] 'did not act in good faith in failing to pay proper overtime pay, and had no reason to believe that its failure to do so was not a violation of the FLSA…' is sufficient.").

Here, Plaintiffs offer sufficient allegations of fact to support an inference that the violations described in the complaint were willful. *Amponsah*, No. 14-3314-ODE (N.D. Ga. Apr. 15, 2015) (Doc. 47, at 10-11) ("[T]he Complaint alleges that DIRECTV and its Providers (like Multiband) have developed a contractual network of Providers and technicians for the specific purpose of avoiding their obligations under the FLSA [record citation omitted]. Such an allegation is sufficient to raise the issue of willfulness above mere speculation. Therefore, a three-year statute of limitations period is proper at this stage of the proceedings."); *Barbosa v. DIRECTV*, No 14-13896-LTS (Order dated Mar. 11, 2015) (Doc. 24).

In sum, Plaintiffs do not disagree that their dates of employment are alleged independent of the limitations period associated with their claims. The facts set out at Doc. 101at 19-21 are inaccurate to the extent that each Plaintiff's claim is for a three-year rather than two-year look-back period from the date they first filed or joined an action against each Defendant. *See Anaya* FAC ¶¶ 144-45; *Hebron* FAC ¶¶ 152-53. And as to the former *Arnold* Plaintiffs, they are entitled to 150 days additional tolling of their claims against DIRECTV per the law of the case.[19] Given

---

[19]   The *Arnold* Court ordered a period of tolling on the running of the opt-ins' limitations period during a
     discovery stay while DIRECTV's motion to dismiss was pending. (*See Arnold* Docs. 46, 49). *Hebron*

their alleged dates of employment, the allegations of willful conduct, and the applicable three-year look-back period plus applicable tolling, Plaintiffs' claims are not, on the face of the Complaints, expired, and Defendants' arguments to the contrary should be denied.

DirectSat correctly notes that the original *Hebron* Complaint, filed October 17, 2014, is the "first time" Plaintiffs brought their claims against DirectSat. (Doc. 95 at 29). DirectSat argues that Plaintiffs Meeley and Stroening's claims are barred by a two-year limitations period. For the reasons set forth above, the limitations period for Plaintiffs Meeley and Stroening, who first filed their claims against DirectSat by way of the original *Hebron* Complaint, filed October 17, 2014, extend back as far as October 17, 2011. Given their dates of employment as alleged in the First Amended Complaint (Meeley—2008 to January 2012; and Stroening—October 2010 to May 2012), their claims against DirectSat are not, on the face of the Complaint, expired. *Hebron* FAC ¶¶ 117, 129, 153.

Similarly, Plaintiffs Gage, Intzekotis, Sobieszek, and Cyprian first asserted their claims against DirectSat in *Anaya*, filed November 1, 2013. Thus, their claims extend back to November 1, 2010. All plaintiffs have therefore alleged timely claims against their respective Defendants, and the tenuous arguments to the contrary should be denied. *See Anaya* FAC, ¶¶ 105, 111, 123, 129, 145.

### F. Plaintiffs state claims under the Illinois Employment Classification Act (IECA), which applies to DIRECTV, DirectSat, and Multiband.

Defendants argue that Plaintiffs' claims, under the IECA 820 ILCS §§ 185/5, 185/10, 185/20 for unlawfully misclassifying Plaintiffs as "independent contractors," must fail because

---

Plaintiffs' First Amended Complaint, ¶ 152, n.19, inaccurately states that the applicable period of tolling was 180 days: The period of tolling was 150 days, which, added to the applicable three-year period gives former *Arnold* Plaintiffs' claims against DIRECTV three years and five months from the date they joined that action.

Defendants are not subject to the IECA at all. Specifically, Defendants argue that: (1) they are not "contractors" as that term is defined by the IECA, 820 § 185/5, and (2) they cannot be contractors because they are not Plaintiffs' joint employers. Doc. 95 at 31; Doc. 101 at 31. Defendants misread the IECA and ignore persuasive authority, which, together, militate against dismissing Plaintiffs' IECA claims.

The IECA "is intended to address the practice of misclassifying employees as independent contractors." *Bartlow v. Costigan*, 2014 IL 115152, ¶ 20, 13 N.E.3d 1216, 1221, *as modified on denial of reh'g* (May 27, 2014), *cert. denied*, 135 S. Ct. 377, 190 L. Ed. 2d 254 (2014); 820 ILCS § 185/3. In *Bartlow*, the Illinois Supreme Court recognized that: "consistent with its purpose, the Act broadly provides that any individual 'performing services' for a construction contractor is 'deemed to be an employee of the employer.'"[20] *Bartlow*, 13 N.E.3d at 1221; 820 ILCS 185/10(a). The term "performing services" is broadly defined to establish a "**broad presumption** that any individual 'performing services,' as statutorily defined, for a construction contractor is an employee of that contractor." *Id.* (Emphasis added). As applied

---

[20]  It follows from the Act's definition of "employee," incorporating the term "performing services," that Plaintiffs are the presumed employees of the Defendants:

An individual performing services for a contractor is deemed to be an employee of the contractor unless it is shown that:

(1) the individual has been and will continue to be free from control or direction over the performance of the service for the contractor, both under the individual's contract of service and in fact;

(2) the service performed by the individual is outside the usual course of services performed by the contractor; and

(3) the individual is engaged in an independently established trade, occupation, profession or business; or

(4) the individual is deemed a legitimate sole proprietor or partnership under subsection (c) of this Section.

820 ILCS § 185/10.

here, the Plaintiffs' work installing satellite television equipment on the real property of DIRECTV's customers falls squarely within the purview of the Act's broad definition of "performing services": "[T]he performance of any constructing, altering, reconstructing, repairing, … refinishing, refurbishing, remodeling, … renovating, custom fabricating, … improving, … and adding to … any building, structure,… or other structure, project,…real property or improvement, or to do any part thereof whether or not the performance of the work herein described involves the addition to, or fabrication into, any structure, project, development, real property or improvement herein described of any material or article of merchandise."

And, as Defendants point out, an "employer" is "any contractor that employs individuals deemed employees" under the Act. 820 ILCS § 185/5. Thus, DIRECTV, DirectSat, and Multiband are indeed contractors under the expansive definitions of the Act and are subject to its remedial provisions. Accordingly, Plaintiffs here assert the private right of action created by the Act, "permitting any individual aggrieved by a construction contractor's violation of the Act to file an action in the circuit court to recover lost wages and benefits, be awarded compensatory damages and an amount up to $500 for each violation, 10% of any civil penalty imposed, and attorneys' fees and costs." *Id.*; 820 ILCS § 185/60, 40.

Following *Barstow*, the Appellate Court of Illinois, in *People v. Ketterman Communications, Inc.*, lifted a stay of proceedings and permitted the Illinois Department of Labor ("Department") to prosecute its investigation of *Ketterman*, a company that specializes in satellite-dish installation, for "misclassifying one or more individuals performing Dish Network satellite installation and services." *People v. Ketterman Commc'ns, Inc.*, 2014 IL App (4th) 120460-U, ¶ 15 (The Department issued a letter alleging "Ketterman violated the Act 'by

misclassifying one or more individuals performing Dish Network satellite installation and services on your behalf in connection with new commercial/residential construction.'" ). The Department's investigation included a letter to Ketterman, stating that "satellite-dish installation fell under the definition of "construction." *Ketterman*, 2014 IL App (4th) ¶ 15.

Despite the broad definitions of the Act, meant to cast an expansive net to effectuate its remedial purposes, Defendants ask the Court to summarily conclude, as a matter of law, that they are not "contractors" within the meaning of the Act because, ostensibly, Defendants do not consider themselves part of the "construction industry." Here, Defendants seek to redefine the broad language of the Act as it applies to them in order to sidestep the consequences "of misclassifying employees as independent contractors." Defendants' position is antithetical to the Act's purposes, and, indeed, exemplifies why the Act provides for a private cause of action to address Defendants' practice of misclassifying its workers.

Moreover, Defendants do not support their position with reference to any facts that may show that their policies and procedures governing the Provider Network cannot be deemed to support a finding that they are contractors under the Act. They do not because they cannot. Indeed, in a recent summary judgment entered by the Western District of Washington, *Perez, et al. v. Lantern Light Corporation, et al.*, Case No. C12-01406-RSM (Order on Cross-Motions for Summary Judgment, Doc. 158), that Court found that DIRECTV was the joint employer of the plaintiffs in that action, who asserted claims under the FLSA supported by facts virtually identical to those supporting the Plaintiffs' claims at bar. On these facts, unique to Defendants' Provider Network and the policies and practices that governed Plaintiffs' work and method of pay, the *Lantern Light* court distinguished *Zampos v. W&E Communications, Inc*., 970 F.Supp.

29

2d 794 (N.D. Ill. 2013) and other decisions finding that joint employment did not exist. Thus, even if this Court applies the same test of joint employment described above, for purposes of determining whether Defendants are employers under the IECA, the Court must find that Plaintiffs have sufficiently pled, as detailed above, an actionable joint-employment relationship with DIRECTV, DirectSat, and Multiband. *See Zampos*, 970 F.Supp. 2d at 807 ("It makes sense to use the same standard to govern the IECA."). Defendants' Motion to Dismiss Plaintiffs' claims should be denied.

**G.    Plaintiffs do not seek to pursue time outside the statute of limitations of the IMWL or IECA.**

Defendant DIRECTV suggests that Plaintiffs improperly make claims under the IMWL and IECA based on the three year statute of limitations for private rights of action. Doc. 101 at 31 (citing 820 ILCS 105/12(a); 820 ILCS 185/60(b)). Plaintiffs do not allege that they seek any time outside the three year statute of limitations period, running for *Hebron* Plaintiffs from October 17, 2014, reaching back to October 17, 2011. *See Hebron* FAC Counts II – V at 30-34. DIRECTV specifically point to Plaintiffs Blanchard, Bradford, Kuachak, Sampson, and Yancey. Doc. 101 at 31-32. None of these Plaintiffs have sought claims under the Illinois state law claims. *See Hebron* FAC Counts II – V at 30-34.

Similarly, DIRECTV argues that the *Anaya* Plaintiffs did not assert their IMWL and IECA claims until November 1, 2013, therefore their claims reaching back to November 1, 2010. *Anaya* Plaintiffs, excluding Cyprian, do not assert their claims under the IMWL or IECA prior to November 1, 2010, three years prior to when their claims were first asserted.

**H.      Plaintiffs do not pursue Illinois claims for time working in other States.**

Defendant DIRECTV argues that Plaintiffs Hebron, Harris, Stroening, and Gage cannot pursue their claims under Illinois law for the time they spent working in states other than Illinois. Plaintiffs do not intend to pursue Illinois state law protections for time spent working in other states. Generally, Plaintiffs Hebron, Stroening, and Gage worked for DIRECTV with "Illinois tech ID" numbers. These Plaintiffs primarily worked in the state of Illinois, but would also perform limited work orders in states like Missouri, Kansas, Iowa, Indiana and Pennsylvania. *See Anaya* FAC ¶ 105; *Hebron* FAC ¶¶ 87, 129. Through targeted discovery, Defendants will identify the locations where these technicians performed work in other states. Plaintiffs who worked specific weeks or otherwise performed specific jobs in other states, where identified, will not pursue those weeks under their Illinois state law claims. More specifically, Plaintiff Harris worked for a period of time, approximately 2006 to June 2011, as a W-2 technician for MasTec in South Carolina and Georgia. *See Hebron* FAC ¶¶ 104-105. Indeed, Plaintiff Harris does not pursue the Illinois state law claims for that time, but only for his time working for DirectSat in the state of Illinois (March 2012 to the present). *Id*. Defendants provide no reason to dismiss Plaintiffs' claims on this basis.

**I.      Plaintiffs have not improperly split claims against DIRECTV.**

Defendants' challenge to Plaintiffs Romero's FLSA claims against DIRECTV must also be denied:[21] As specified in the First Amended Complaint, these three Plaintiffs are not identified on the *Arnold* voluntary decertification list because they are continuing to pursue

---

[21]   Defendant DIRECTV only argues claim splitting as applied to Plaintiff Romero; Plaintiffs Sampson and Yancey are also pursuing their W-2 time in the *Arnold* class action and the arguments equally apply to their circumstances.

certain claims in Arnold; claims they are specifically **not** pursuing in this action. *Anaya* FAC ¶ 79, n.5; *Hebron* FAC ¶ 84, n.5.

Specifically, Plaintiff Romero is pursuing a claim for time served as a W-2 employee of DirectSat from September 14, 2012 to the present in *Arnold*. As alleged in the *Anaya* Complaint, his claims here are against DIRECTV and DirectSat for his time spent from May 2009 to February 2010 working as an independent contractor of VIA Sat. *Anaya* FAC ¶¶ 134-135. His claims against DIRECTV in the two actions are not duplicative of each other.

Similarly, Plaintiff Sampson is pursuing a claim for time served as a W-2 employee of DirectSat from May 2011 to April 2012 in *Arnold*. As alleged in the Complaint, his claims here are against DIRECTV for his time spent from May 2010 to May 2011 working as an independent contractor of Pinnacle Technologies. *Hebron* FAC ¶¶ 122-123. His claims against DIRECTV in the two actions are not duplicative of each other.

Plaintiff Yancey is also pursuing a claim for time served as a W-2 employee of Multiband from February 2010 to January 2011 in *Arnold*. As alleged in the Complaint, his claims here are against DIRECTV for his time spent from August 2010 to January 2010 working as an independent contractor of Preferred Installation Services. *Hebron* FAC ¶¶ 134-135. His claims against DIRECTV in the two actions are not duplicative of each other.

**J.    Plaintiffs' Claims Under the Illinois Wage Payment Collection Act ("IWPCA") Should Not Be Dismissed.**

While Plaintiffs do not plead an agreement or contract between Plaintiffs and DIRECTV relating to Defendants' piece-rate pay system, *Anaya* FAC¶ 65, *Hebron* FAC ¶ 68,  Plaintiffs exhaustively plead an employment structure that effectively controlled the manner in which Plaintiffs were paid. *See Anaya* FAC ¶ 65; *Hebron* FAC ¶ 68 ("There was no contract,

memorandum, or other document between Plaintiffs and Defendants properly memorializing or explaining this pay system."); *see also Anaya* FAC ¶¶ 61-77; *Hebron* FAC ¶¶ 64-80. Indeed, there was no contract or agreement pursuant to which Plaintiffs agreed to be paid a piece-rate for both productive and non-productive time. Plaintiffs defer to the Court's discretion in this regard, noting that claims to recover overtime wages and final payment under the IWPCA may be brought under circumstances where Plaintiffs did not plead a specific employment contract or agreement. *See Wharton v. Comcast Corp., 912 F. Supp. 2d 655, 661 (N.D. Ill. 2012) Perez, et al. v. Lantern Light Corporation, et al*., Case No. C12-01406-RSM (Order on Cross-Motions for Summary Judgment, Doc. 158).

> **K. Even if the Court believes that certain aspects of Plaintiffs' First Amended Complaint are not sufficiently detailed, the appropriate remedy is to afford Plaintiffs leave to amend, not to dismiss this case in its entirety.**

For all the reasons described above, Plaintiffs' Complaint is supported with the requisite factual allegations showing that they have a plausible chance of success on their claims. Nonetheless, should the Court believe that Plaintiffs' Complaint is somehow deficient; the appropriate remedy is to afford Plaintiffs time to file a Motion for Leave to Amend their complaint to cure any deficiencies identified by the Court. Out of an abundance of caution, and in light of precedent suggesting that including a request for leave to amend within a responsive brief is not sufficient to preserve the request, Plaintiffs are contemporaneously filing a Conditional Motion for Time Within Which to Seek Leave to Amend. *See Moore v. State of Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993); *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) (holding district court did not abuse its discretion by denying plaintiffs' request for leave to amend, which was contained in one sentence in responsive briefing, because request was not clearly presented as a distinct motion).

## IV.     CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motions to Dismiss (Docs. 53, 54 & 57) and allow this case to proceed on its merits, or in the alternative, allow Plaintiffs an opportunity to file a motion for leave to amend their Complaint to address any deficiencies identified by the Court.

Dated:  July 1, 2015                                    **STUEVE SIEGEL HANSON LLP**

By:  /s/ Ryan D. O'Dell
        Ryan D. O'Dell
        500 West C Street, Suite 1750
        San Diego, California 92101
        Telephone: 619-400-5822
        Facsimile: 619-400-5832
        Email: odell@stuevesiegel.com

        George A. Hanson
        460 Nichols Road, Suite 200
        Kansas City, Missouri 64112
        Telephone:816-714-7100
        Facsimile: 816-714-7101
        Email:  hanson@stuevesiegel.com

        **WERMAN SALAS, P.C.**
        Douglas Werman
        77 W. Washington Street, Suite 1402
        Chicago, IL 60602
        Telephone: 312-419-1008
        Facsimile: 312-419-1025
        Email:  dwerman@flsalaw.com

        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on all attorneys of record via the Court's electronic case filing system on July 1, 2015.

/s/ Ryan D. O'Dell _____
*Attorney for Plaintiff*

35