UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HEBRON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 14-cv-8155 |
| v. ) | |
| ) | Judge John W. Darrah |
| DIRECTV, LLC; MULTIBAND CORP.; ) | |
| and DIRECTSAT USA, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On March 24, 2015, Plaintiffs filed a First Amended Complaint against Defendants DIRECTV, LLC, Multiband Corp., and DirectSat USA, LLC.[1] (FAC.) The First Amended Complaint alleges violations of the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201, *et seq.*; the Illinois Minimum Wage Law (the "IMWL"), 820 Ill. Comp. Stat. 105/1, *et seq.*; the Illinois Wage Payment and Collection Act (the "IWPCA"), 820 Ill. Comp. Stat. 115/1, *et seq.*; and the Illinois Employee Classification Act (the "IECA"), 820 Ill. Comp. Stat. 185/3, *et seq*. Defendants DIRECTV and DirectSat have filed Motions to Dismiss [62, 76] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. For the reasons discussed below, Defendants' Motions to Dismiss [62, 76] are granted in part and denied in part.

---

[1] Plaintiffs Arlandis Bradford, Anthony Harris, Rodney Meeley, and Richard Stroening bring claims against both DIRECTV and DirectSat. Plaintiffs Robert Hebron, Larry Blanchard, David Kauchak, Lonny Sampson, and Brent Yancey bring claims solely against DIRECTV. Plaintiff Terry Weatherman brings claims against DIRECTV and Multiband.

## BACKGROUND

DIRECTV is a Delaware corporation with its principal place of business in El Segundo, California. (FAC ¶ 16.) Multiband Corp. is a Minnesota corporation, with its principal place of business in New Hope, Minnesota. (*Id.* at ¶ 17.) DirectSat is a Delaware limited liability company with its principal place of business in King of Prussia, Pennsylvania. (*Id.* at ¶ 18.) Robert Hebron is an individual residing in Missouri. (*Id.* at ¶ 6). The remaining Plaintiffs are individuals residing in Illinois. (*Id.* at ¶¶ 7-15.) Plaintiffs worked as satellite television installation technicians whose principal duty was to install and repair DIRECTV satellite television service. (*Id.* at ¶ 21.)

DIRECTV controls and manages their service technicians by either employing them directly ("W-2 Employees") or through an employment network of service providers (the "Provider Network") consisting of Home Services Providers ("HSPs"), including DirectSat, Secondary Service Providers ("Secondary Providers"), subcontractor, and service technicians. (*Id.* at ¶ 22.) DIRECTV was the primary client of the HSPs and Secondary Providers and was the source of substantially all of their income. (*Id.* at ¶ 24.) During the relevant time period, DIRECTV merged with or acquired several HSPs. (*Id.* at ¶ 25.) DIRECTV regularly gives Providers "extraordinary advance payments" in order to keep Providers afloat. (*Id.* at ¶ 42.) DIRECTV has absorbed several Providers through acquisition; and to date there are only three independent HSPs in operation, including DirectSat. (*Id.* at ¶ 43.)

DIRECTV controls the Provider Network through contracts with HSPs and Secondary Providers; the HSPs and Secondary Providers then enter into contracts with largely captive entities that DIRECTV refers to as subcontractors; and those subcontractors then enter into contracts with the technicians who install the satellite television equipment. (*Id.* at ¶ 26.) In

2

some cases, the HSPs and Secondary Providers contract directly with technicians. (*Id.*) DirectSat passed along scheduling from DIRECTV and provided supervision of some technicians. (*Id.* at ¶ 27.) DirectSat maintained a contractor file for each technician working for them. (*Id.* at ¶ 28.) The files were regulated and audited by DIRECTV. (*Id.*) The technicians were called 1099 technicians or independent contractors. (*Id.*) DirectSat had the ability to enter into and terminate contracts with the 1099 technicians. (*Id.* at ¶ 29.) DirectSat also maintained warehouses where 1099 technicians had to pick up some equipment and take some training. (*Id.* at ¶ 30.)

Technicians had to install DIRECTV's satellite television equipment according to the same policies, procedures, practices, and performance standards as required by DIRECTV. (*Id.* at ¶ 31.) DIRECTV uses Provider Agreements to ensure that technicians perform their work as specified, and Subcontractor Agreements and Technician Agreements incorporate the provisions of the Provider Agreements. (*Id.* at ¶¶ 32-33.) The Provider Agreements control almost all facets of the technicians' work. (*Id.* at ¶ 34.) Each technician is assigned a work order through a centralized computer software system that DIRECTV controls. (*Id.* at ¶ 35.) DIRECTV mandates certain methods and standards of installation. (*Id.*) Because of this, each technician's job duties are virtually identical. (*Id.*) DIRECTV used a database program known as SIEBEL to coordinate the assignment of work orders to technicians using a unique "Tech ID Number" for each technician. (*Id.* at ¶ 36.) Upon arriving at each work site, technicians were required to check-in with DIRECTV. (*Id.* at ¶ 38.) After an assigned job, technicians were required to report to DIRECTV that the installation was complete. (*Id.*) Through the SIEBEL system, DIRECTV and the Providers control who can perform work and have the ability to effectively terminate any technician by ceasing to issue work orders. (*Id.* at ¶ 57.)

Plaintiffs were required to purchase and wear a uniform with DIRECTV insignia on it and to display DIRECTV insignia on vehicles driven to customers' homes. (*Id.* at ¶ 39.) Plaintiffs were also made to hold themselves out as agents of DIRECTV. (*Id.* at ¶ 51.) DIRECTV also requires that all technicians pass pre-screening and background checks and obtain a certification from the Satellite Broadcasting & Communications Association before they could be assigned work orders. (*Id.* at ¶ 54.) Independent Contractor Plaintiffs were also required to purchase supplies necessary to perform installations and required to provide all maintenance and purchase all gas for the vehicles they drove between customers' homes. (*Id.* at ¶ 75.)

Plaintiffs were compensated on a piece-rate payment scheme that is utilized throughout DIRECTV's network. (*Id.* at ¶ 65.) Under the piece-rate system, technicians are paid on a per-task basis for certain enumerated "productive" tasks. (*Id.* at ¶¶ 69-70.) Plaintiffs were not compensated for assembling satellite dishes, transportation to and from assignments, reviewing and receiving schedules, contacting customers to confirm installations, obtaining required supplies, assisting other technicians, performing required customer education, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on installations where Plaintiffs had to return and perform additional work on previously completed installations ("chargebacks"). (*Id.* at ¶ 71.) There was no contract, memorandum, or other document between Plaintiffs and Defendants, memorializing or explaining the pay system. (*Id.* at ¶ 68.)

DIRECTV and Providers' quality-control personnel reviewed Plaintiff's work and imposed "chargebacks" and/or "rollbacks" based on those reviews. (*Id.* at ¶ 58.) Chargebacks were deductions from technicians' pay if there were issues with an installation or questions from

4

a customer. (*Id.* at ¶ 74.) Such issues included: faulty equipment, improper installation, customer calls on how to operate their remote control, and customers' failure to give greater than a ninety-five percent satisfaction rating for the services provided. (*Id.*)

Plaintiffs allege that they were routinely required to work more than forty hours per week, while being denied overtime pay and being subjected to an effective wage rate below that required by law. (*Id.* at ¶ 79.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). However, Plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## ANALYSIS

### *Count I - FLSA*

In Count I, Plaintiffs allege that Defendants violated the FLSA by failing to pay overtime wages and failing to pay minimum wage.

#### Joint-Employer Relationship

Defendants argue that Plaintiffs have not shown that an employer-employee relationship existed for the purposes of the FLSA. Employer is defined as including "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The "FLSA contemplates several simultaneous employers who may be responsible for compliance with the FLSA." *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011) (citing *Falk v. Brennan*, 414 U.S. 190, 191 (1973)). For a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee. *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) (quoting *Moreau v. Air France*, 343 F.3d 1179, 1182 (9th Cir. 2003)).

Courts look at various factors to determine whether an entity is a joint employer, including whether the alleged employer "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records." *Moldenhauer*, 536 F.3d at 644. The economic reality of the situation controls whether the FLSA applies. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961). The FLSA "has been construed liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 211 (1959).

Defendants argue that Plaintiffs have not sufficiently alleged Defendants had the power to hire or fire them, determine the rate or method of their pay, or maintained records pertaining to their alleged employment. Plaintiffs do not allege that DIRECTV had the power to hire or fire them. Plaintiffs do claim that DIRECTV could effectively terminate any technician by ceasing to issue work orders. (FAC ¶ 57.) While Plaintiffs allege that DirectSat had the ability to enter into and terminate contracts with the 1099 technicians, Plaintiffs do not allege that they themselves were 1099 technicians. (*Id.* at ¶ 29.)

Plaintiffs allege that DIRECTV entirely supervised and controlled employee work schedules by issuing work orders through SIEBEL. (*Id.* at ¶¶ 36, 57.) DIRECTV further determined the policies, procedures, practices, and performance standards for installing its service. (*Id.* at ¶ 31.) While DIRECTV determined what tasks were compensable and what tasks were not, there is no allegation that they determined the rate of compensation. (*Id.* at ¶ 50.) There is no allegation that DirectSat determined what tasks were compensable or the rate of compensation. Plaintiffs admit that Providers, and not DIRECTV, paid Plaintiffs using their own payroll and paycheck systems. (*Id.*) It is not clear whether DirectSat was one of those Providers. There is also no allegation of any agreement or contract with either Defendant, providing how Plaintiffs were paid. (*Id.* at ¶68.) Plaintiffs allege that DirectSat kept a contractor file for each technician and that those files were regulated and audited by DIRECTV. (*Id.* at ¶ 28.) They further allege that the contractor files are analogous to a personnel file. (*Id.*)

Plaintiffs have not sufficiently alleged that DIRECTV and DirectSat were joint-employers for the purposes of the FLSA. As pled, Defendants did not have the right to hire or fire Plaintiffs, nor did Defendants determine the rate or method of Plaintiffs' compensation. Allegations that DIRECTV set certain standards and qualifications for technicians' performance

7

does not equate to hiring; and DirectSat's quality-control requirements do not equate to supervision and control by an employer. That DIRECTV issued work orders to technicians is not the same as controlling the schedule of employees. DirectSat is also alleged to have passed along scheduling from DIRECTV, but it is not clear if this refers to the SIEBEL system or something else. Plaintiffs have not plausibly pled Defendants were joint employers, for the purposes of the FLSA, based on the factors set out above. Defendants' Motions to Dismiss Count I, therefore, are granted without prejudice. Because the FLSA claims against DIRECTV have been dismissed, only employees who received a W-2 from DirectSat, and bring claims against DirectSat, remain.[2]

## Overtime

Defendants also argue that Plaintiffs have not made sufficiently specific allegations that they worked overtime. "Under the FLSA, a nonexempt employee who works more than forty hours in a given week must be compensated for those excess hours." *Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1014 (N.D. Ill. 2013) (citing 29 U.S.C. § 207(a)(1)). Harris alleges that between approximately 2006 and the present, he worked more than forty hours per week as a technician for DIRECTV, MasTec, and DirectSat. (FAC ¶ 105.) Harris estimates that, in a given workweek, he would work fifty-five hours, seven of which were unpaid, and be paid $725 per week. (*Id.* at ¶ 108.) Meeley alleges that between approximately 2008 and January 2012, he worked more than forty hours per week as a technician for DIRECTV and DirectSat. (*Id.* at ¶ 117.) Meeley estimates that, in a given workweek, he would work fifty-

---

[2] Plaintiffs Arlandis Bradford, Anthony Harris, and Rodney Meeley allege that they were W-2 employees of DirectSat. Bradford brings claims against DIRECTV. Harris and Meeley bring claims against DIRECTV and DirectSat.

four hours, ten of which were unpaid, and be paid $500 per week, minus unpaid expenses of $4 per week. (*Id.* at ¶ 120.)

Defendants cite to several federal appellate cases to support their argument that Plaintiffs allegations lack sufficient specificity. In *Davis v. Abington Memorial Hospital*, the named plaintiffs did not allege that they worked more hours during a typical, forty-hour week. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) ("None of the named plaintiffs has alleged a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours."). In contrast, "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice." *Id.* The court in *Lundy v. Catholic Health System of Long Island Inc.*, came to a similar conclusion: ". . . in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). The Ninth Circuit has upheld a similar standard: "A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014).

Here, Harris and Meeley have alleged that, in an average week, they worked for more than forty hours and were not compensated for at least some of the time they worked more than forty hours. Meeley alleges that he worked fourteen hours overtime and was unpaid for ten of those hours. Harris alleges that he worked fifteen hours overtime and was unpaid for seven of

9

those hours. Both Harris and Meeley have plausibly alleged that they worked unpaid overtime in an average week.

Defendants also argue that, even if Plaintiffs' claims were pled with sufficient specificity, they still fail to plead viable FLSA overtime violations. Specifically, Defendants allege that the amount Plaintiffs allege they were paid does not amount to a denial of overtime compensation. Plaintiffs respond that Defendants use incorrect calculations[3] and that, due to the piece-rate system whereby Defendants failed to pay for all hours worked, they were not compensated correctly for the overtime worked. Plaintiffs allege that they worked overtime hours which were unpaid. Based on the piece-rate system, Plaintiffs could have performed several tasks that were compensated at a high-rate and yet worked hours of unpaid overtime; while the total amount of pay, when calculated on an hourly basis, would appear that Plaintiffs were compensated for overtime. "A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo*, 526 F.3d 1086 (citing *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006)). However, this is not what occurred here. In this regard, Defendants appear to have raised a factual issue, which is not properly reached in resolving Defendants' Motions.

Defendants' Motions to Dismiss all Plaintiffs overtime claims are granted without prejudice except as to Harris and Meeley.

## Minimum Wage

Plaintiffs argue that Defendants' failure to reimburse them for chargebacks, business expenses, and time spent working for Defendants that is not covered by the piece-rate system

---

[3] Defendants use a calculation of 1.5 times the minimum wage, while Plaintiffs claim that they were owed an overtime premium of 0.5 times their regular rate of pay.

caused Plaintiffs to receive a below-minimum wage. The FLSA requires employers to pay their employees a minimum wage, unless those employees fall into certain exempted categories. 29 U.S.C. § 206(a) (2010). "Employee repayment and reimbursement provisions do not violate the FLSA provided the employee's effective wages remain above the minimum wage level." *Franks v. MKM Oil, Inc.*, No. 10-CV-13, 2010 WL 3613983, at *4 (N.D. Ill. Sept. 8, 2010) (citing *Heder v. City of Two Rivers, Wisc.*, 295 F.3d 777, 782 (7th Cir. 2002)). However, Plaintiffs have not adequately pled any facts demonstrating that these factors ever caused them to earn less than the minimum wage in any given workweek. Plaintiffs merely assert that Defendants' practices caused their hourly wage to fall below the minimum. But, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

Defendants also argue that, even if Plaintiffs' claims were pled with enough specificity, they still fail to plead viable FLSA violations. Specifically, Defendants assert that the pay Plaintiffs allege receiving does not amount to an hourly wage less than the current federal minimum wage. However, Plaintiffs also allege that they were not paid for tasks for which they should have been compensated, which then resulted in a wage actually below that required by the FLSA. As stated above, Defendants appear to raise a fact issue. Regardless, as discussed above, Plaintiffs' mere assertions that Defendants' practices caused their hourly wage to fall below the minimum wage are insufficient to withstand a Rule 12(b)(6) motion.

Defendants' Motions to Dismiss Plaintiffs' minimum wage claims is granted without prejudice.

<u>Limitations Period</u>

Defendants also argue that Plaintiffs fail to state a claim under the FLSA for recovery beyond a two-year period. "[E]xcept for cases of willful violations, claims under the FLSA must be brought within two years of the violation." *Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995). In contrast, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Willful violations are those where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "[A]n employer's mere negligence or a good faith – but incorrect – belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation." *Difilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 425 (S.D.N.Y. 2008). Defendants claim that Plaintiffs have not sufficiently alleged willfulness to allow for a three-year limitations period. Plaintiffs have alleged that "Defendants' unlawful conduct was willful because . . . DIRECTV and other members of the Provider Network knew, or should have known, that the fissured employment scheme utilized a piece-rate system(s) that unlawfully denied Plaintiffs minimum wage, overtime wage, and other employment benefits." (FAC ¶ 155.) Plaintiffs have sufficiently alleged willfulness to extend the limitations period to three years.

<u>Record Keeping</u>

Defendants also seek a dismissal of Plaintiffs' claims to the extent that they state record keeping violations under the FLSA. "Plaintiffs cannot maintain a stand-alone private cause of action for record keeping violations under the FLSA." *Farmer v. DirectSat USA, LLC*, No. 08 C 3962, 2010 WL 3927640, at *12 (N.D. Ill. Oct. 4, 2010) (collecting cases). Plaintiffs do not contend that there is a private cause of action but do argue that evidentiary burdens shift because

of Defendants' failure to keep records. To the extent that Plaintiffs state record keeping violations, those claims are dismissed with prejudice.

### *Count II - IMWL*

In Count II, certain Plaintiffs[4] allege a violation of the IMWL due to Defendants' failure to pay all wages earned and unpaid by the next payday following the end of their employment. "[A]s a result of the common purpose and the similar language of the IMWL and the FLSA, the same analysis has generally been applied to the two statutes." *Driver v. AppleIllinois, LLC,* 917 F. Supp. 2d 793, 798 (N.D. Ill. 2013) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n. 3, 605 (7th Cir. 1993)). As discussed above, Independent Contractor Plaintiffs have failed to plausibly allege a joint-employer relationship with Defendants. Further, Plaintiffs have failed to plausibly allege that Defendants' policies caused them to earn less than the minimum wage in any given week. Defendants' Motions to Dismiss Count II are granted without prejudice.

### Statute of Limitations

Defendant DIRECTV argues that Plaintiffs make claims outside of the three-year statute of limitations for the IMWL. Claims under the IMWL must "be brought within 3 years from the date of the underpayment." 820 Ill. Comp. Stat. 104/12(a). Plaintiffs claim that they are not seeking any relief under the IMWL for any claims outside the three-year statute of limitations period. To the extent that Plaintiffs are seeking relief outside of the IMWL's statute of limitations, that relief is denied with prejudice.

---

[4] Plaintiffs in Count II include: Robert Hebron, Anthony Harris, Rodney Meeley, Richard Stroening, and Terry Weatherman.

*Counts III and IV - IWPCA*

In Count III, certain Plaintiffs[5] allege a violation of the IWPCA due to Defendants' failure to pay all wages earned and unpaid by the next payday following the end of their employment. In Count IV, certain Plaintiffs[6] allege a violation of the IWPCA, stating that Defendants made deductions from wages or final compensation for chargebacks, failed to reimburse Plaintiffs for reasonable and necessary business expenses, and only partially compensated Plaintiffs for their earned straight-time and overtime wages and final compensation.

The IWPCA requires that a claim for compensation be based on a "contract or agreement" between employer and employee. 820 Ill. Comp. Stat. 115/2 (West 2010). Plaintiffs admit in their FAC that there was no written agreement between Plaintiffs and Defendants. (FAC ¶65.) Plaintiffs argue that claims to recover overtime wages and final payment under the IWPCA can be brought when Plaintiffs do not plead a specific employment contract or agreement, citing to *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655 (ND. Ill. 2012). However, in *Wharton*, the court found that an employee handbook could serve as an agreement between the plaintiff and defendant. *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 660-61 (N.D. Ill. 2012). Plaintiffs, in this case, cannot point to any agreement or contract whatsoever as a basis for their IWPCA claims. Defendants' Motions to Dismiss Counts II and III are granted without prejudice.

*Count V - IECA*

In Count V, Plaintiff Richard Stroening alleges that Defendants violated the IECA by misclassifying him as an independent contractor. "Our duty is to interpret the Act as best we predict the Illinois Supreme Court would." *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire*

---

[5] Plaintiffs in Count III include: Rodney Meeley and Richard Stroening.
[6] Plaintiffs in Count IV include: Robert Hebron, Anthony Harris, and Richard Stroening.

*Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012). The Illinois Supreme Court has stated that "the [IECA] was enacted by the General Assembly with the express purpose to 'address the practice of misclassifying employees as independent contractors' in the construction industry." *Bartlow v. Costigan*, 13 N.E.3d 1216, 1221, 2014 IL 115152, ¶ 20 (Ill. 2014) (citing 820 Ill. Comp. Stat. 185/3 (West 2010)). The IECA provides that any individual "performing services" for a construction contractor is "deemed to be an employee of the employer." 820 Ill. Comp. Stat. 185/10(a) (West 2010). During the relevant times, contractor was defined as "any sole proprietor, partnership, firm, corporation, limited liability company, association or other legal entity permitted by law to do business within the State of Illinois who engages in construction . . . ." 820 Ill. Comp. Stat. 185/5 (West 2010). Construction was defined as:

> any constructing, altering, reconstructing, repairing, rehabilitating, refinishing, refurbishing, remodeling, remediating, renovating, custom fabricating, maintenance, landscaping, improving, wrecking, painting, decorating, demolishing, and adding to or subtracting from any building, structure, highway, roadway, street, bridge, alley, sewer, ditch, sewage disposal plant, water works, parking facility, railroad, excavation or other structure, project, development, real property or improvement, or to do any part thereof, whether or not the performance of the work herein described involves the addition to, or fabrication into, any structure, project, development, real property or improvement herein described of any material or article of merchandise. Construction shall also include moving construction related materials on the job site to or from the job site.

820 Ill. Comp. Stat. 185/5. The FAC alleges that DIRECTV is a provider of satellite television services and describes DirectSat as performing "middle-management functions." (FAC ¶¶ 1, 26.) Defendants are not alleged to be contractors engaged in construction. As the express purpose of the IECA is to address the practice of misclassifying employees in the construction industry, the IECA does not apply here. Defendants' Motions to Dismiss Count V are granted with prejudice.

**CONCLUSION**

For the reasons set forth above, Defendants' Motions to Dismiss [62, 76] are granted in part and denied in part. Defendants' Motions to Dismiss Count I are granted without prejudice except as to Plaintiffs Harris's and Meeley's overtime claims against DirectSat. Defendants' Motions to Dismiss Count II are granted without prejudice. Defendants' Motions to Dismiss Counts III and IV are granted without prejudice. Defendants' Motions to Dismiss Count V are granted with prejudice. Plaintiffs may file, within thirty days of this Order, an amended complaint as to the allegations in Counts I, II, III, and IV, if they can do so in strict compliance with Rule 11.

Date:    October 13, 2015

JOHN W. DARRAH
United States District Court Judge